UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PHILLIP DAVIE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-503-XR |
| | § | |
| NORTHSIDE INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| *Defendant*. | | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

On this day the Court considered Plaintiff's Motion for Summary Judgment (Docket Entry

No. 23) and Defendant's Motion for Summary Judgment (Docket Entry No. 24).  Having

considered the motions, responses and replies thereto, and the record in this case, the Court hereby

DENIES both parties' motions for summary judgment on all claims.

**Background**

Plaintiff Phillip Davie ("Davie") was hired on August 20, 2001 as a G3 Electrician by

Defendant Northside Independent School District.[1]  He was subsequently promoted to the position

of G7 Electrician.[2]  On or about September 1, 2003, Davie was diagnosed with bi-polar disorder

and began treatment for related symptoms.[3]  Davie had a number of absences from work during

---

[1]Affidavit of Phillip Davie ¶ 6 (attached as Exhibit 1 to Pl.'s Mot. for Summ. J. (Docket Entry No. 23)).

[2]*Id.* ¶ 22.

[3]*Id.* ¶ 8-10.

his employment with NISD, and concerns about his absences were reflected in his employment evaluations.[4]  Other than these attendance concerns, Davie's evaluations reflected that his job performance met expectations.[5]

On June 20, 2007, Davie was absent from work for a dental appointment which required oral surgery.[6]  Davie suffered a reaction to the medications administered by the dentist that required him to extend his leave.[7]  On or about July 18, 2007, while still on leave and recovering from the reaction to the medications, Plaintiff fell and injured his shoulder, requiring further extension of his leave.[8]  His doctor determined that the shoulder injury would interfere with his ability to perform his job functions.[9]  On July 26, 2007, Plaintiff requested an extension of his FMLA leave.[10]  Plaintiff signed a leave of absence (LOA) application on August 2, 2007, and was

---

[4]*Id.* ¶ 11, 14; Northside Independent School District Maintenance Staff Evaluations; May 15, 2003, May 19, 2004, May 14, 2005, May 11, 2006, Jun. 12, 2007 (attached as Exhibits 2-5 to Pl.'s Mot.).

[5]Northside Independent School District Maintenance Staff Evaluations; May 15, 2003, May 19, 2004, May 14, 2005, May 11, 2006, Jun. 12, 2007 (attached as Exhibits 2-5 to Pl.'s Mot.).

[6]Davie Aff. ¶ 30; Affidavit of Mark Hardison 2, Oct. 15, 2010 (attached as Exhibit 1 to Def.'s Mot. for Summ. J. (Docket Entry No. 24)).

[7]Davie Aff. ¶ 31; Hardison Aff. at 2; *See* Application for Leave of Absence, Aug. 2, 2007 (attached as Exhibit A-3 to Def.'s Mot.).

[8]Davie Aff. ¶ 35; Hardison Aff. at 2.

[9]Davie Aff. ¶ 36; Hardison Aff. at 2; Letter from Phillip Davie to Bernie Morin, Jul. 26, 2007 (attached as Exhibit A-4 to Def.'s Mot.).

[10]Davie Aff. ¶ 38; Hardison Aff. at 2.

2

informed that a specific medical form was required, which he provided on August 8, 2007.[11]  On

September 6, 2007, NISD requested a Fitness-for-Duty Certificate from Davie's doctor, which

Davie provided on September 12, 2007.[12]  The following day, September, 13, 2007, NISD

terminated Plaintiff's employment, effective September 17, 2007.[13]

Davie filed a Complaint in this Court on June 22, 2009, which he amended September 30,

2009.[14]  He alleges that Defendant unlawfully terminated his employment on account of his

disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et

seq.*[15]  He also alleges that his termination violates the Family and Medical Leave Act ("FMLA"),

29 U.S.C. §§2601 *et seq.*[16]  He seeks compensatory damages for past and future wages, benefits,

expenses, and pain and suffering, and an injunction that NISD reinstate him to his prior job

position and fully restore his rights, seniority, and benefits.[17]  Both Plaintiff and Defendant filed

---

[11]Application for Leave of Absence, Aug. 2, 2007 (Def.'s Mot. Ex. A-3); Davie Aff. ¶¶ 42-43.

[12]Fitness-for-Duty Certificate, Sept. 12, 2007 (attached as Exhibit A-5 to Def.'s Mot.); Davie Aff. ¶ 47.

[13]Davie Aff. ¶ 50; Hardison Aff. at 2-3; Letter from Mark Hardison to Phillip Davie, Sep. 13, 2007 (attached as Exhibit A-6 to Def.'s Mot.).

[14]Pl.'s Orig. Compl., Jun. 22, 2009 (Docket Entry No. 1); Pl.'s Am. Compl., Sep. 30, 2009 (Docket Entry No. 3).

[15]Pl.'s Am. Compl. at VII.

[16]*Id.* at VIII.

[17]*Id.* at VI, X.

motions for summary judgment on October 15, 2010,[18] and both subsequently filed responses[19] and replies.[20]

**Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case."  *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial."  FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  To avoid summary judgment, the nonmoving party must adduce

---

[18]Pl.'s Mot. for Summ. J., Oct. 15, 2010 (Docket Entry No. 23); Def.'s Mot. for Summ. J., Oct. 15, 2010 (Docket Entry No. 24).

[19]Def.'s Resp. To Pl.'s Mot., Oct. 26, 2010 (Docket Entry No. 25); Pl.'s Resp. To Def.'s Mot., Oct. 29, 2010 (Docket Entry No. 26).

[20]Pl.'s Reply to Def.'s Resp., Nov. 5, 2010 (Docket Entry No. 28); Def.'s Corrected Reply to Pl.'s Resp., Nov. 10, 2010 (Docket Entry No. 28).

admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992).  The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings.  *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).  The Court reviews all facts in the light most favorable to the nonmoving party.  *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).  A motion for summary judgment cannot be granted simply because there is no opposition.  *Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006).

**Analysis**

**1. Violation of the Americans with Disabilities Act**

Davie's Complaint alleges that NISD "unlawfully and discriminatorily terminated Plaintiff's employment on account of his disability."[21]   Davie seeks summary judgment that NISD has discriminated against him in violation of the ADA, arguing that he has proved a *prima facie* case of discrimination with regard to his termination.[22]   He further argues that NISD's reason for the termination has been proven to be untrue.[23]  Defendant also moves for summary judgment, arguing that Plaintiff cannot establish a *prima facie* case of discrimination under the ADA, and that even if he could, Defendant had a legitimate, nondiscriminatory reason for its actions.[24]

The Fifth Circuit has held that the *McDonnell Douglas* burden-shifting framework applies in

---

[21]Pl.'s Am. Compl. at VII.

[22]Pl.'s Mot. ¶ 35.

[23]*Id.* ¶ 36.

[24]Def.'s Mot. at 9.

ADA discrimination claims. *Crews v. Dow Chemical Co.,* 287 Fed.Appx. 410 (5th Cir. 2008)

(quoting *McInnis v. Alamo County Community College Dist.,* 207 F.3d 276, 279-280 (5th Cir. 2000)).

This framework requires that a plaintiff present a *prima facie* case of discrimination by providing

evidence that (1) he was disabled or regarded as disabled, (2) he was qualified for the job, (3) he was

subjected to an adverse employment action because of his disability, and (4) he was treated less

favorably than non-disabled employees. *Id.* Once a plaintiff establishes a *prima facie* case, the

burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse

action. *Id.* at 280. If the defendant is able to provide such a reason, the burden then shifts back to the

plaintiff "to establish by a preponderance of the evidence that the articulated reason was merely a

pretext for unlawful discrimination." *Id.* At the summary judgment stage, a Plaintiff need only raise

a genuine issue of material fact with regard to the *prima facie* showing. *Amburgey v. Corhart

Refractories Corp.,* 936 F.2d 805, 811 (5th Cir. 1991). He need only show "evidence, circumstantial

or direct, from which a factfinder might reasonably conclude that the employer intended to

discriminate in reaching the decision at issue." *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41

(5th Cir. 1996) (quoting *Amburgey,* 936 F.2d at 812)).

The parties do not dispute that Davie's bi-polar disorder qualifies as a disability under the

terms of the ADA.[25] Defendant argues, however, that it was Davie's shoulder injury, not his bi-polar

disorder, which made him unable to perform the job duties of a G7 Electrician, and the shoulder

injury is not a qualifying "disability."[26] Defendant argues that Davie's termination was "due to the

fact that he had exhausted his available leave and [due to his shoulder injury,] his doctor indicated

---

[25]Def.'s Reply at 3; Pl.'s Mot. at II.A.

[26]Def.'s Mot. at 9; Def.'s Reply at 3.

that he would not be able to return to work until at least approximately three more weeks."[27]  It argues that "the only accommodation that Plaintiff alleges he ever requested under the ADA was to be allowed to take days off occasionally with respect to his bi-polar disorder," and that it complied with these requests.[28]

Plaintiff does not claim that his shoulder disability qualifies as a "disability" under the ADA, but rather argues that his "series of health issues provided Defendant an opportunity to terminate Plaintiff and eliminate having to accommodate Plaintiff's disability."[29]  Davie argues that the termination, while purportedly based on the limitations created by his shoulder injury, raises an "inference of discrimination;"[30] that NISD's decision to terminate his employment was motivated by his history of absences, not the conclusions of the Fitness-for-Duty certificate submitted in relation to his shoulder injury.[31]

There remains a genuine issue of material fact as to the second element of Plaintiff's *prima facie* case, whether Davie was qualified to perform the job duties at the time that his employment was terminated.  Both parties rely on a Fitness-for-Duty certificate submitted by Davie's physician to NISD on September 12, 2007.[32]  Plaintiff argues that the certificate proves that he was able to return to work, albeit with some restrictions, while Defendant relies on the same certificate to conclude that

---

[27]Def.'s Mot. at 9.

[28]*Id*. at 10.

[29]Pl.'s Mot. ¶ 21.

[30]*Id*. ¶ 32.

[31]Pl.'s Resp. at 5.A.

[32]Fitness-for-Duty Certificate, Sep. 12, 2007 (Def.'s Mot. Ex. A-5).

he was incapable of performing some essential functions of his job.

Furthermore, there is a genuine issue of material fact as to whether the decision to terminate Davie's employment was based on a legitimate and non-discriminatory reason. Defendant argues that the termination was due to the limitations created by his shoulder injury, while Plaintiff argues that the stated reason was merely a pretext and the termination was actually due to Plaintiff's bi-polar disorder. If the prior issue is resolved to find that Davie was in fact capable of performing his duties, that creates an inference that NISD's motivation was due in fact to Davie's disability. Thus, there is a genuine issue as to whether Davie's termination was discriminatory, and summary judgment on the claim of disability discrimination must be denied.

## 2. Violation of the Family and Medical Leave Act

The FMLA prohibits both interference with FMLA rights and retaliation against an employee who exercises FMLA rights. 28 U.S.C. § 2615; *Mauder v. Metropolitan Transity Authority of Harris County,* 446 F.3d 574, 580 (5th Cir. 2006) (citing *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 927 (5th Cir. 1999)). Davie moves for summary judgment on his FMLA claim, arguing that he has proved a *prima facie* case of interference with his FMLA rights by termination of his employment before the end of his FMLA leave period, and that his termination was retaliatory because NISD has offered no legitimate, non-discriminatory reason for terminating his employment.[33] NISD also moves for summary judgment that that it did not interfere with Davie's rights under the FMLA, because Davie was unable to perform the essential functions of his job when his FMLA leave expired, and because he acknowledged that he suffered no harm due to the District's actions regarding his benefits

---

[33]Pl.'s Mot. ¶¶ 32-33.

during the time that he was on leave.[34]   NISD also moves for summary judgment that it did not

retaliate against Davie, arguing that he cannot establish a *prima facie* case of retaliation under the

FMLA.[35]

## A.  Interference

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the

attempt to exercise, any right provided" by the FMLA.  28 U.S.C. § 2615.  To succeed on an FMLA

interference claim, an employee must prove that his employer interfered with, denied, or restrained

his exercise of FMLA rights, and that the interference actually resulted in prejudice or harm.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  A Plaintiff may only recover for

monetary losses directly caused by the interference, as well as appropriate equitable relief.  *Id.*; 28

U.S.C. § 2617(a)(1)(A)(i)(II); (a)(1)(B).  Once the employee establishes that he was entitled to the

FMLA entitlement, and that entitlement was denied by his employer, then  the employer's intent or

motivation in denying the right is of no consequence.  *Nero*, 167 F.3d at 927.  Furthermore, the

employer cannot defend the treatment by arguing that it treated all employees equally.  *Id.*

The FMLA requires employers to grant to eligible employees "a total of 12 workweeks of

leave during any 12-month period" for any qualifying event including "a serious health condition that

makes the employee unable to perform the functions of the position of such employee."  29 U.S.C.

§ 2612(a)(1).  Such an employee is also entitled "to be restored by the employer to the position of

employment held by the employee when the leave commenced" or "to be restored to an equivalent

position with equivalent employment benefits, pay, and other conditions of employment."  29 U.S.C.

---

[34]Def.'s Mot. at 6.

[35]*Id.* at 7.

§2614(a)(1). Davie claims that NISD interfered with his FMLA rights by both failing to grant him the full 12 weeks of FMLA leave, and by refusing to restore him to his prior position.

NISD calculated Davie's 12 weeks of FMLA leave beginning June 20, 2007, resulting in an end date of September 11, 2007.[36] Plaintiff argues that termination of his 12 weeks of leave on that date was inappropriate, because NISD's own policies provide that July 1 begins a new FMLA year.[37] Davie argues that if the calculation had begun on July 1, 2007, then the 12 weeks would have expired on September 22, 2007, after his termination date.[38] He further argues that, because NISD's Administrative Regulation PER-23[39] states that "FMLA leave shall begin with the thirty-first day of absence or earlier at the employee's request," he did not qualify for FMLA leave until July 18, 2007, such that his leave should have ended until 12 weeks after that date, or October 9, 2007.[40] Plaintiff argues that he did not apply for FMLA leave until July 18, 2007 because previously he was within the 30 days of absence permitted by NISD's PER-23 policy before being placed on a LOA.[41] Defendant argues that provision of the PER-23 policy is not automatic, but discretionary, citing the

---

[36]Amendment of Confirmation of Leave of Absence, Aug. 22, 2007 (attached as Exhibit 16 to Pl.'s Mot.).

[37]Pl.'s Mot. ¶ 22-26; Administrative Regulation PER-23 ¶ 5 (attached as Exhibit 17 to Pl.'s Mot.); Northside-Bexar County Compensation and Benefits/Leaves and Absences 6 (attached as Exhibit 18 to Pl.'s Mot.).

[38]Pl.'s Mot. ¶ 24.

[39]Administrative Regulation PER-23 establishes policies for implementation of the FMLA. (Pl.'s Mot. Ex. 17).

[40]*Id.* ¶ 25.

[41]Pl.'s Resp. at 10; Administrative Regulation PER-23 ¶ 5 (Pl.'s Mot. Ex. 17).

language of the policy which uses the word "may" instead of "shall."[42]   The conflicting evidence raised by both parties relating to the appropriate calculation of the time period for Davie's FMLA leave indicates that there is a genuine issue of fact as to whether NISD interfered with Davie's FMLA rights by terminating his employment before the end of his guaranteed 12 weeks of FMLA leave.

NISD argues that it did not interfere with Davie's rights, because the FMLA implementing regulations state that "[i]f an employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."[43]   29 C.F.R. § 825.114(b); *Oatman v. Fuji Photo Film USA,* 54 Fed.Appx. 413, *2 (5th Cir. 2002).  Both parties rely on a Fitness-for-Duty certificate submitted by Davie's physician to NISD on September 12, 2007.[44] Plaintiff argues that the certificate proves that he was able to return to work, albeit with some restrictions, while Defendant relies on the same certificate to conclude that he was incapable of performing some essential functions of his job.  Thus, there is a genuine issue as to whether or not Davie was capable of returning to his position at the expiration of his 12 weeks of FMLA leave.  This fact is material on the issue of whether NISD interfered with Davie's FMLA rights by refusing to restore him to his position, and thus summary judgment on the claim must be denied.

**B.  Retaliation**

The Fifth Circuit analyzes FMLA retaliation claims under the *McDonnell Douglas* framework, as there is "no significant difference between such claims under the FMLA and similar claims under

---

[42]Def.'s Reply at 5.

[43]Def.'s Mot. at 6.

[44]Fitness-for-Duty Certificate, Sep. 12, 2007 (Def.'s Mot. Ex. A-5).

other anti-discrimination laws." *Hunt v. Rapides Healthcare System,* 277 F.3d 757, 768 (5th Cir. 2001) (citing *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir. 1999)).  The Plaintiff must prove a *prima facie* case of retaliation by proving that (1) he was protected under the FMLA, (2) he suffered an adverse employment action, and (3) the adverse decision was made because he exercised FMLA rights.  *Chaffin,* 179 F.3d at 319.; *Mauder*, 446 F.3d at 583 (citing *Hunt v. Rapides Healthcare Sys.,* 277 F.3d 757, 768 (5th Cir. 2001)).  To determine the causal relationship between the employee's termination and his exercise of FMLA rights, the Court may consider the "temporal proximity" between the two events.  *Mauder,* 446 F.3d at 583.  A retaliatory motive may be inferred if the termination occurs shortly after the exercise of FMLA rights.  *Nero*, 167 F.3d at 928.

The burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the termination, which rebuts the presumption of retaliation raised by the *prima facie* case.  *Id.* at 319-320.  If the defendant is able to do so, the burden then shifts back to the plaintiff to prove that the reason stated by the employer was a pretext, and that the actual reason for the termination was the exercise of FMLA rights.  *Id.* at 320.  At the summary judgment stage, a plaintiff need only raise a genuine issue of material fact with regard to the *prima facie* showing.  *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir. 1991).

Davie's retaliation claim turns on similar facts as his interference claim.  There is no dispute that Davie was an employee of NISD who was exercising his FMLA entitlements by seeking 12 weeks of FMLA leave for a qualifying injury.  There is also no dispute that Davie's employment was terminated effective September 17, 2010.  The contested issue with regard to the retaliation claim is whether the termination was caused by his exercise of FMLA rights.  Defendant argues that Plaintiff has presented no evidence that he was treated any less favorably than any employee who had not

12

requested FMLA leave, and no evidence that his employment was terminated because of his exercise of his FMLA rights.[45]  Defendant argues that, instead, the decision to terminate Davie's employment was based on his inability to return to work for at least three more weeks.[46]

Although Davie has presented no affirmative evidence that NISD's decision to terminate his employment was caused by the exercise of his FMLA rights, the evidence presented with regard to timing is such that a retaliatory motive could be inferred.  Davie did not initiate his request for FMLA leave until July 26, 2007, his leave of absence with FMLA was approved on August 15, 2007,[47] which he did not receive until August 29, 2007.  NISD then requested a written Fitness-for-Duty Certificate, which Davie provided on September 12, 2007.[48]  NISD verbally informed Davie of his termination on September 13, 2007, less than one month after approving Davie's LOA and FMLA, and only one day after receiving his Fitness-for-Duty certificate.[49]  The very short time frame creates an inference of retaliation.  Although this inference may not be sufficient to support an ultimate finding that NISD retaliated against Davie for his FMLA leave, the evidence is sufficient to create a genuine issue of material fact, and thus to survive summary judgment.

---

[45]Def.'s Mot. at 7.

[46]*Id.*

[47]Davie Aff. ¶ 46.

[48]*Id.* ¶ 47-48.

[49]Letter from Phillip Davie to Mark Hardison, Sept. 17, 2007 (attached as Exhibit 11 to Pl.'s Mot.).

## CONCLUSION

The Court finds that genuine issues of material fact remain with regard to Plaintiff's discrimination claim under the ADA, 42 U.S.C. § 12101 *et seq.*  Genuine issues of material fact also remain as to Plaintiff's interference and retaliation claims under the FMLA, 29 U.S.C. §§2601 *et seq.*.  Pursuant to the standards of FED. R. CIV. P. 56, the Court therefore DENIES Defendant's Motion for Summary Judgment (Docket Entry No. 24) and DENIES Plaintiff's Motion for Summary Judgment (Docket Entry No. 23).

It is so ORDERED.

SIGNED this 17th day of November, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

14